

# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000246131 | **Location:** | **Primos Tire** |
| **Investigation Name:** | Hieu Mattison | | 4948 W Alameda Ave |
| **Date:** | September 27, 2016 | | Denver, CO 80219 |
| **Time:** | 9:10 a.m. | | |
| **Participant(s):** | K.R., Witness | | |
| | Arleta Moon, Special Agent | | |
| | Melissa Tweet, Special Agent | | |

On the above date and time, Special Agent Moon and Special Agent Tweet went to Primos Tire and met with K.R.. Special Agent Moon had previously met with K.R. on September 22, 2016. Special Agent Moon introduced Special Agent Tweet to K.R.. K.R. provided the following information in response to the Agents questions:

1. K.R. stated after the agent's left his business last week, he called Mattison and asked if he could meet with him. K.R. met with Mattison that day and told him that IRS Agents were asking questions about his tax return. K.R. asked him some questions about his wages and his business tax returns but felt that Mattison didn't answer his questions.

2. Mattison told K.R. that his wages were reported correctly under code 812990 which is All Other Services – General Business (this code was used on his Schedule C). Mattison also told K.R. that he had made a mistake on the tax return. Mattison prepared and filed an amended tax return (1040X) while K.R. was in the office. K.R. showed the agents the amended tax return and said they could make a copy. The amended tax return increased K.R. wages and decreased his Schedule C gross receipts (Attachment A).

3. K.R. asked Mattison about the IRS investigation. Mattison told him he was not worried about it, his lawyer told him not to worry because they were going after tax preparers this year. Mattison said he didn't do anything wrong and said "what do I have to gain off this". Mattison said it was in God's hands. Mattison told K.R. he was not going to prepare tax returns anymore he was going to do something else.

4. K.R. made an appointment to meet with Mattison on Friday, September 23, 2016 to discuss a letter he received form the IRS for nonpayment for his Forms 941s for prior years and discuss his business tax returns. Mattison told him to bring his bank statements back to the office. K.R. went to Mattison office on Friday but he wasn't in the office.

Mattison had to marry a couple. K.R. said he trusted Mattison because he was a minister.

5.  K.R. heard about Hieu Mattison (Mattison) from a business owner on Mississippi. K.R. started going to Mattison's business AAAE Financial located at 7500 W. Mississippi Ave in Lakewood, CO in 2006 or 2007.  Mattison prepared all K.R. tax returns including 940s and 941s, sales taxes and state taxes.  K.R. said he would just drop his bank statements off to Mattison and he would call K.R. when the returns were ready to pick up.

6.  In May 2016, K.R. went to Mattison's office for the preparation of his 2015 income tax return and quarterly reports.  K.R. met with Mattison and gave him his bank statements.  K.R. went back on May 31, 2016 to pick up a copy of his tax returns and quarterly reports.  K.R. said he would write the checks in Mattison's office and mail the quarterly returns.  K.R. said he paid Mattison $150 every quarter.  Sometimes Mattison needed tires or work on his daughter's car, K.R. would provide tires or service for the payment that quarter.

7.  K.R.'s 2015 tax return was electronically filed.  K.R. was told he would receive his refund in 30 days.  In July, K.R. had not received his refund; he called Mattison and was told he would receive it any day.  K.R. received his refund in August; it was directly deposited into his bank account.

8.  K.R. had some prior year tax returns and files at the office.  Special Agent Moon reviewed the 2007 information.  The files contained individual income tax returns and profit and loss statements for the business.  K.R. said Mattison prepared the profit and loss statements from his bank records but he did not receive one for 2015.

9.  Special Agent Moon reviewed the 2015 Schedule C, Profit or Loss from Business with K.R.. K.R. was asked about his income and expenses from Primos Tire. K.R. estimated he made between $10,000 to $13,000 per month. K.R. said his expenses were $5,000 to $6,000 per month. The expenses included rent for $1,000 per month, electric and gas, tires, etc. K.R.'s business bank account is with Chase bank. Only business income was deposited in the account. K.R. stated that in 2015, $200 or $400 of his daughter's wages was deposited into his bank account. K.R. did not provide the listed gross receipts amount of $19,250 or the wages amount of $11,500 to Mattison.

10. When asked about the $10,500 wages on line 7 of his tax return which list HSH (Household wages); K.R. said he is not sure how Mattison calculated his Form W-2 wages. K.R. said he has always received $500 a week for salary for both him and his wife from the business.  K.R. said he use to write a check to himself every week but Mattison told him not to waste the checks and just withdraw the cash.  K.R. said normally he would only withdraw $500 per week; however if he had extra personal expenses he would have to withdraw more.  K.R. estimated his total wages for 2015 were approximately $26,000 not $10,500 reported on the tax return (or $13,000 on the 1040X).

U.S. Treasury Criminal Investigation

MOI_00000182

11. K.R. stated Mattison's son D.M. works with him.  K.R. believes he also prepares tax returns but is not sure.

12. Special Agent Moon thanked K.R. for his time and asked him to try and locate his 2014 business and personal tax returns, profit and loss statements for 2014 and 2015, his 2015 bank statements and all his 940 and 941s for 2014 and 2015.

    I prepared this memorandum September 27, 2016, after refreshing my memory from notes made during and immediately after the interview with K.R..


Arleta Moon
Special Agent


Melissa Tweet
Special Agent

U.S. Treasury Criminal Investigation

MOI_00000183