IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00044-MSK-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HIEU C. MATTISON,

    Defendant.

_____

**RESPONSE TO GOVERNMENT'S SENTENCING STATEMENT**
_____

Hieu C. Mattison ("Mr. Mattison"), by and through undersigned counsel, David E. Johnson, hereby files this Response to Government's Sentencing Statement (Doc. No. 29) ("Govt. Statement"):

**I.    Acceptance of Responsibility**

The government argues that Mr. Mattison should not receive any Guideline reduction for acceptance of responsibility, per Section 3E1.1, because of alleged "continued criminal conduct prior to and just after his change of plea hearing." Govt. Statement at 5. Mr. Mattison submits the reduction should apply.

While several (although not all) of the tax returns were filed with the IRS after Mr. Mattison's change of plea hearing, Mr. Mattison met with all of the clients at issue in the government's filing, and obtained information from them for the filing of their tax returns, *prior* to the change of plea hearing. While many of the *filings* did not actually occur until

1

around the time of the change of plea hearing, Mr. Mattison's preparation of their tax returns had begun and been finalized much earlier.

As demonstrated in Attachment 1 (redacted),[1] documentation demonstrates when Mr. Mattison met with most of the clients at issue in order to prepare their tax returns.[2] The dates are as follows:

| Taxpayer's Initials | Date of Meeting |
|---|---|
| C.C. | March 29, 2016 |
| M.D. | March 16, 2016 |
| L.E. & R.E. | April 2016 |
| E.M. | June 7, 2016 |
| T.N. & Q.N. | April 17, 2016 |
| H.O. | February 2016 |
| J.P. | January 15, 2016 |
| M.P. | April 9, 2016 |
| C.P. | May 22, 2016 |
| F.R. | April 12, 2016 |
| G.S. | February 15, 2016 |
| D.Y. | March 14, 2016 |

---

[1]  Undersigned counsel has provided counsel for the government with an non-redacted version of Attachment 1.
[2]  Following several of these meetings, several taxpayers signed a "Confirmation Signature" form indicating that the information filed is correct and authorized for tax year 2015.  See Attachment 1.  Mr. Mattison was unable to locate the signed Confirmation Signature form for 2015 for all clients at issue in the government's statement.  But he did find such signed forms for 2014 year filings and, in any event, he does recall going over the same form with all clients.  He took this step as a result of the instant

2

The only two taxpayers that documentation does not demonstrate when they met with Mr. Mattison, L.G. and K.R., are long-time clients of Mr. Mattison who met with Mr. Mattison frequently throughout the year. In essence, although the filings themselves may have occurred near the time of the change of plea hearing, Mr. Mattison's preparation of the taxpayer's returns began much earlier. Such conduct, even as alleged, does not negate the acceptance of responsibility he demonstrated at the change of plea hearing in this case.

The primary purpose behind Section 3E1.1's "Acceptance of Responsibility" reduction is to differentiate between defendants who truthfully admit the conduct comprising their offense of conviction and those who do not, the latter of which typically go to trial. Additionally, the Commission provided for one additional level of reduction to differentiate between defendants who assist authorities in the investigation or prosecution of their own misconduct by timely entering a plea of guilty, thus avoiding the waste of both the Government's and the Court's time and resources, and those who do not. Mr. Mattison has satisfied both of these objectives.

First, Mr. Mattison has truthfully admitted the conduct comprising the offenses of conviction, and has truthfully admitted or not falsely denied any additional relevant conduct for which he is accountable. Second, Mr. Mattison has assisted in the investigation or prosecution of his own misconduct by timely entering a plea of guilty, thus permitting the Government to avoid preparing unnecessarily for trial and further permitting

---

prosecution, in an effort to remedy the problems identified through the government's prosecution of him.

both the Government and the Court to allocate their resources more efficiently.  And, as the Commission itself put it, "entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offenses of conviction … will constitute *significant* evidence of acceptance of responsibility…" U.S.S.G. § 3E1.1, app.n. 3 (emphasis added).

The government's citation to *United States v. Simpson*, 283 F. App'x 747 (10th Cir. 2008) (unpublished) is distinguishable.  In that case, in addition to the new conduct alleged, the defendant had also "appropriately received an obstruction-of-justice enhancement" for "attempt[ing] to influence a witness to lie to the IRS and l[ying] to a probation officer in the course of the presentence investigation." 283 F. App'x at 753, 752.  Having received that enhancement, the Court noted that the defendant would have to demonstrate "'extraordinary' circumstances" to then obtain any reduction for acceptance of responsibility, which he did not demonstrate. *Id.* at 753.  Here, there is no allegation that Mr. Mattison obstructed justice, and thus *Simpson* is not entirely on point.

Given the above, Mr. Mattison objects to the government's position on acceptance of responsibility, and requests that the Court apply a three-level reduction for Acceptance of Responsibility.  That would result in a Guidelines recommendation of 18 to 24 months, as calculated in the initial disclosure of the PSR.  *See* Doc. No. 25 at ¶ 79.  Such a reduction adequately reflects Mr. Mattison's timely entry of a guilty plea and truthful admission of the facts underlying his offense of conviction.

**II.    A sentence of 5 years' probation should be imposed.**

The government stated that it will ask the Court to impose a sentence at the bottom of the applicable guideline range, sans the acceptance of responsibility reduction.  Govt.

Statement at 6. Although that guideline range is not stated in their Sentencing Statement, it appears the government believes Mr. Mattison should be offense level 18, Criminal History Category I, with a resulting range of 27 to 33 months. If that is the accurate range, the government will ask this Court to impose a sentence of 27 months.

Regardless of the correct range, Mr. Mattison asks the Court to impose a sentence of 5 years' probation, agreeing with the 12 special conditions recommended in the PSR. *See* Doc. No. 25 at R-4 to R-5. After conducting its Section 3553(a) analysis, this Court should conclude that a custodial sentence is not warranted in this case.

### A.   History and Characteristics

The PSR details Mr. Mattison's unique upbringing and the circumstances that led to him becoming an orphan as a result of the Vietnam War. Most of his family being killed during a bombing and fire-fight in his family's village, a young Mr. Mattison was provided medical care by American soldiers. He was an orphan. His mother, father, and siblings were casualties of the war. *See* PSR at ¶¶ 40-41. Mr. Mattison has scars from the war all over his body. *Id.* at ¶ 53. He is also deaf in his right ear from exposure to explosions. *Id* at ¶51.

Mr. Mattison's younger years were plagued with emotional loss and instability. After losing his family, he was placed in the care of a nun, Sister Anicet, who ran an orphanage. For a period of time, he was taken out of the orphanage, which was difficult for him. Eventually, he would return to Sister Anicet, but not permanently. On January 25, 1973, he landed in Denver, Colorado, to be adopted into an American family. He had lost Sister Anicet, a second mother figure. *Id.* at ¶ 42.

Soon after being adopted, his adoptive parents separated.  Mr. Mattison went to live with his adoptive father.  He had lost his adoptive mother, a third mother figure.  Unfortunately, living with Mr. Mattison's new step-mother was difficult.  *Id.* at ¶ 45. He often felt he was treated differently by her due to his background.  *Id.*

By the age of 12 or 13 years old, Mr. Mattison began drinking alcohol.  He began smoking marijuana daily at age 14.  *Id.* at ¶ 56.  He was smoking two-packs of cigarettes a day.  He was heading in the direction of a drug dealer.  "[Mr. Mattison] reported that it appeared his drug abuse was a coping strategy for him in all that he had experienced." *Id.*

In February 1984, Mr. Mattison used his last drug (including cigarettes).  It was at that time, when he was removed of all temptations to consume alcohol, drugs, or tobacco, and in return he devoted himself to becoming a pastor. PSR at ¶ 57.  At the time, Mr. Mattison was enrolled at Mesa State College.  By 1985, Mr. Mattison was working for a contractor who contracted with the Department of Energy; he was certifying people to work on radiological and contaminated sites.  He also taught nuclear physics.  Mr. Mattison did that work until approximately 1997.  *See id.* at ¶ 60.

For approximately the next three years, from 1997 to 2000, Mr. Mattison devoted his time as a pastor at Victor Chapel in Grand Junction, as well as completing missionary work, participating in three overseas missions.  PSR at ¶ 46.  With his relationship with his wife beginning to strain, Mr. Mattison began to manage finances and develop land with his sister's husband.  He did that work until 2004, when he began employment with Jackson Hewitt.  *Id.* at ¶ 66. In 2006, Mr. Mattison left Jackson Hewitt to start AAAE

6

Financial. *Id.* at ¶ 62.  Currently, Mr. Mattison is also an "independent associate" for Legal Shield.  *Id.* at ¶ 64.

Mr. Mattison is also a family man. He has three biological children from his previous marriage, and he also "adopted" a son that his ex-wife had from a previous relationship of her's. PSR at ¶ 46.  He has two biological grandchildren.  Further, since 2011, Mr. Mattison has been in a relationship with his common-law wife.  She, in turn, has two children from a prior relationship, who have children of their own.  Mr. Mattison has a total of four step-grandchildren.  The most recent step-grandchild was born in late December 2016.  The parents of that newborn are the couple that currently live with Mr. Mattison and his common law wife.  *See* PSR at ¶¶ 47, 48.

### B. Helpfulness

By all accounts, Mr. Mattison is someone who wants to help.  Letters that will be given to the Probation Office by counsel reflect this.  Counsel's office's communications with those who know Mr. Mattison best reflect this.  All talk about Mr. Mattison's desire to help others, even at his own time and expense.  All describe him in praising terms. However, it was also noted that Mr. Mattison remains someone who fails to express emotion well.  *Id.* at ¶ 55.

Perhaps as a way to cope with the tragedies he has faced, the most important aspect of Mr. Mattison's life is his missionary and pastor work.  *See, e.g.*, PSR at ¶¶ 46, 54, 65.  Mr. Mattison founded and runs a non-profit organization called "The Place" ministry, where he works as a pastor. *Id.* at ¶ 65.  During a home visit, the probation officer noted that Mr. Mattison's "garage was stocked with numerous miscellaneous items that

[Mr. Mattison] reported storing until someone has a need for it in the community he interacts with." PSR at ¶ 49.

In addition to the letters, this is perhaps best exemplified by the PSR's recounting of Mr. Mattison's ex-wife, whom he was married to for almost 15 years. "She believes that because of the tragedies he endured, he has found a way to disconnect himself from it. As a result, she believes he continually tries to help others (hence, part of why he became a pastor) without understanding the weight and gravity of his decision." PSR at ¶55.

### C. Nature and Circumstances of the Offense.

The instant offense of conviction involves Mr. Mattison's preparation of false tax returns as a part of his work at AAAE Financial. Mr. Mattison did this for the benefit of happy customers. As detailed in the plea agreement, Mr. Mattison "filed 34 false tax returns for 16 individuals for tax years 2008 through 2012 for a total tax loss amount of $133,544." Plea Agreement, Doc. No. 22, at 6.

Mr. Mattison and AAAE Financial have filed thousands of tax returns for clients. Based on a review of records, AAAE made a total of 7,737 filings in 2012. In 2011, the total filings was 6,249. Mr. Mattison estimates in 2010, there were approximately 5,000 filings. In 2009, there were 2,902 total filings. And in 2008, there were approximately 2,000 total filings with the IRS.

Having been trained at Jackson Hewitt, tax preparation became a service Mr. Mattison performed for those he wanted to help. He was not reaping financial wealth from the endeavor. Nor does Mr. Mattison live beyond his means. *See* PSR at ¶ 49. For

the past five years, Mr. Mattison has been renting a three bedroom home that he shares with his common-law wife, her biological daughter, and the daughter's boyfriend.

Mr. Mattison has never served a day of jail or prison. A 27 month imprisonment term (assuming the government is correct as to the applicable guideline calculation, which as described above it is not) is unnecessary under these circumstances.

This is Mr. Mattison's first and only felony conviction. That alone and the consequences that come with it, impress upon Mr. Mattison the seriousness of the instant prosecution.

Finally, a 5 year probation term would ensure Mr. Mattison is under the supervision of the United States Probation Office for a lengthy period of time, ensuring his compliance with conditions. And, importantly, maintaining employment to make restitution payments. (Mr. Mattison has repeatedly expressed the desire to pay his restitution. *See, e.g.*, PSR at ¶ 62.) Should the government obtain its desired result –- *i.e.* an imprisonment term and a lengthy one, at that – Mr. Mattison's ability to pay restitution will be virtually non-existent while in custody. Then, following release, the supervision of the United States Probation Office would be for a maximum of 1 year.

Here, the course that best complies with Section 3553(a) – where a first-time felony conviction has been sought and obtained, where the defendant has never served any imprisonment time, and where the Court's supervision of the defendant is maximized including restitution payment – is a sentence of 5 years' probation.

9

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


*/s/ David E. Johnson*
David E. Johnson
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_Johnson@fd.org
Attorney for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2017, I electronically filed the foregoing ***Response to Government's Sentencing Statement*** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Martha Ann Paluch, Assistant U.S. Attorney
Email: Martha.Paluch@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Hieu C. Mattison *(via U.S. Mail)*


*/s/ David E. Johnson*
David E. Johnson
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_Johnson@fd.org
Attorney for Defendant