IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00044-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

HIEU C. MATTISON,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing:  Order)
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 9:13 a.m., on the 24th day of May, 2017, in Courtroom 901A, United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

    MARTHA PALUCH, Assistant U.S. Attorney, 1801 California Street, Suite 1600, Denver, Colorado, 80202, appearing for the Government.

    DAVID JOHNSON, Assistant Federal Public Defender, 633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1          (The following proceedings were had and entered of
2     record after the Court heard the arguments of counsel and
3     statement of defendant:)
4          *THE COURT:*  I'll announce the sentence I intend to
5     impose.  Of course, counsel, you'll have an opportunity to make
6     legal objections before judgment actually enters.  If you
7     believe that the sentence as I describe is premised upon error
8     or if it raises an issue that you've not had the opportunity to
9     research or address, I invite you to request a continuance.
10          Imposition of a sentence in a federal criminal case is
11    governed by a number of statutes.  The umbrella statute is
12    18 U.S.C. Section 3553.  In imposing sentence in this case, and
13    in all other cases, the Court must consider the objectives and
14    the factors that are set out in this statute.  The statute
15    requires that the sentence imposed be sufficient but not
16    greater than necessary to satisfy particular objectives.  The
17    sentence must reflect the seriousness of the offense; promote
18    respect for the law; provide just punishment; adequately deter
19    criminal conduct; protect the public from further crimes by the
20    defendant; and provide the defendant with needed educational or
21    vocational training, medical care, or other correctional
22    treatment in the most effective manner.
23          To fashion a sentence that meets these objectives, the
24    statute directs the Court to consider particular factors:  The
25    nature and circumstances of the offense; the history and

1  characteristics of the defendant; the kinds of sentences that
2  are available; the sentence prescribed by the federal
3  sentencing guidelines; the need to avoid unwarranted sentence
4  disparities among defendants with similar records found guilty
5  of similar conduct; and in this case, the need for restitution.
6          At the beginning of this hearing, I noted the
7  documents that I had studied in preparing for the hearing,
8  including all of the letters in support of Mr. Mattison.  I
9  asked counsel if there were any other documents.  Mr. Johnson
10 pointed out an additional document, and it included a letter I
11 had not yet read, and I read it.
12         Turning to the presentence investigation reports.  I
13 asked whether counsel and the defendant had adequate
14 opportunity to review all of those, and they had.  There were
15 no factual disputes as to the presentence reports or the
16 addenda.  There was a dispute, however, as to the calculation
17 of the sentencing range recommended by the federal sentencing
18 guidelines; and that is where we start.
19         The 2016 federal guidelines manual has been used in
20 calculating the guideline sentence in this case, and the
21 parties have not objected to that.  The Base Offense Level for
22 violation of 26 U.S.C. Section 7206(2) is found in sentencing
23 guideline sentence 2T1.4 of the guidelines, that section
24 provides that the Base Offense Level is the level found in
25 Section 2T4.1, the tax table, that corresponds to the tax loss.

1  The loss in this case is stipulated by the parties at $133,544.
2  And, thus, pursuant to Section 2T4.1, a tax loss that is more
3  than $100,000 but less than $250,000 has a Base Offense Level
4  of 16.
5         Then there are specific offense characteristics that
6  result in a two-level increase.  This is because the defendant
7  was the owner of AAAE Financial, where he prepared tax returns
8  for clients and was in the business of preparing or assisting
9  in preparation of tax returns.  He was the primary tax return
10 preparer.  And, thus, two levels are added pursuant to Section
11 2T1.4(b)(1)(B).  This results in an Adjusted Offense Level of
12 18.
13        Now, ordinarily, at this juncture, because there was a
14 plea agreement, there would be a decrease in three levels under
15 the guidelines found at Section 3E1.1(a) and Section 3E1.1(b) .
16 These are what we call acceptance of responsibility reductions,
17 and they would reduce the adjusted offense level by three
18 levels, taking it down to a Total Offense Level of 15.  But the
19 Government contends that these acceptance of responsibility
20 reductions should not be given in this particular case because
21 the Government contends that after Mr. Mattison entered his
22 plea of guilty pursuant to a written plea agreement on July 20,
23 he turned around and filed a number of fraudulent tax returns
24 with the IRS, at least seven, three of which the defense says
25 were based upon statements of the taxpayer that the information

1   in the return was accurate, but four of which no one disputes

2   the information was inaccurate and the return was filed after

3   the plea was submitted to the Court.

4         Mr. Mattison, through his counsel, argues that this

5   really wasn't a new act or a new return, these were old returns

6   that somehow had gotten hung up in the filing with the IRS.

7   But, nevertheless, there appears to be no dispute that some

8   action had to occur after July 20 to cause these returns that

9   contained the same kind of false information as the other

10  returns at issue in this case to be filed with the IRS.

11        Section 3E1.1 of the guidelines provides for

12  acceptance of responsibility if, A, the defendant clearly

13  demonstrates acceptance of responsibility for his offense, and,

14  B, if he qualifies for a decrease under A and there is a

15  certain offense level, on the motion of the Government stating

16  that the defendant has assisted authorities in the

17  investigation or prosecution of his own misconduct by timely

18  notifying authorities of his intention to enter a plea of

19  guilty, thereby permitting the Government to avoid preparing

20  for trial or permitting the Government and the Court to

21  allocate their resources efficiently, another level is

22  decreased.

23        I'm going to start in reverse order.  Obviously, the

24  Government does not believe that Mr. Mattison is entitled to

25  the 3E1.1(b) extra point -- point of reduction.  And,

1   therefore, since it is the Government's choice as to whether to
2   request that or not, and they do not request it, I deny that
3   point.
4           Turning to A.  A is a decrease in level by two levels.
5   And that's where the question becomes whether the defendant
6   clearly demonstrated acceptance of responsibility for his
7   offense.  Among the things that the Court is required to
8   consider, according to the application notes, is whether the
9   defendant voluntarily terminated or withdrew from criminal
10  conduct or associations.  That is found in application note
11  1(b).
12          Here, the Government contends that Mr. Mattison did
13  not withdraw from the criminal conduct in which he was engaged.
14  He completed it after he entered a plea.  He knew that there
15  were tax returns that had false information, and he assured
16  that they would be filed after he entered his plea.
17          The facts here are kind of murky, in the sense that
18  there is very little evidence before the Court as to what the
19  process was that was used between the time of the plea hearing,
20  the Rule 11 hearing, and the time these returns were filed.
21          Both counsel have argued that it -- there are
22  different things that could happen in that period of time.  And
23  the evidence by the agent is, it doesn't happen automatically,
24  something has to transpire, there has to be an action, but
25  there is no evidence that it was Mr. Mattison's action.

1            Under these circumstances, with the burden being on
2    the Government and with the showing by a preponderance of the
3    evidence standard applying, I conclude the Government has not
4    shown it was Mr. Mattison who engaged in specific conduct
5    between July 20 and the time of the filing of these returns on
6    the 22nd, the 24th, and -- I'm sorry, 21st, 22nd, and 24th of
7    2016.
8            For that reason, I believe that the Government has not
9    demonstrated that Mr. Mattison is not entitled to the
10   acceptance of responsibility reduction, but only a two-level
11   reduction is applied.  This results in an offense level of 16,
12   as compared to 15.
13           Now, I take these facts, however, into consideration
14   after I complete the calculation under the guidelines in
15   determining what sentence is appropriate under
16   18 U.S.C. Section 3553.
17           So a total offense level of 16 is combined with
18   criminal history.  Here, the defendant has a -- has no criminal
19   convictions and, therefore, a criminal history score of zero
20   under the guidelines.  And with a criminal history score of
21   zero, he falls into Criminal History Category I.
22           With a Criminal History Category of I and an offense
23   level of 16, the guidelines recommend incarceration of 21 to 27
24   months.  And I am assuming that there is no change with regard
25   to the calculation of supervised release or a fine; is that

1  correct?
2      I'm going to ask our probation officer.
3      *PROBATION OFFICER:* Your Honor, the 2014 fine table is
4  used.
5      *THE COURT:* Okay. And it doesn't change the
6  supervised release term?
7      *PROBATION OFFICER:* No.
8      *THE COURT:* Okay. So under the guidelines, the
9  appropriate sentence or recommended sentence would be 21 to 27
10 months of incarceration; a supervised release term of one year,
11 a fine of 4,000 to $40,000, and a special assessment of $100,
12 which is mandated by statute.
13     That is not the end of the analysis, however. The
14 question becomes, what sentence is appropriate under
15 18 U.S.C. Section 3553? That's where we started from.
16     Here, the defense argues that a variant sentence,
17 meaning a sentence outside the guidelines, should be applied.
18 And there are several reasons that the defense argues that that
19 is the case.
20     Mr. Johnson points to Mr. Mattison's tragic life
21 circumstances, the fact that this is his first conviction, and
22 the fact that he lives a life-style in which he is caring and
23 giving toward others. The Government argues that he has
24 committed a crime and should be held accountable for the crime
25 he has committed.

1     Here are a couple of observations that I frequently
2  make in sentencing hearings.  It is not the role of the Court
3  to determine whether the defendant is a good person or a bad
4  person.  I would be flip to say, that's above my pay grade.  My
5  job here is to determine whether the conduct that Mr. Mattison
6  engaged in requires a particular sentence.  So although I
7  respect and commend Mr. Mattison for all of the good works he
8  has done, it doesn't cancel out his illegal conduct.  In fact,
9  I suspect it in part leads to the conduct or led to the conduct
10 that was illegal.  It may well have been out of compassion and
11 a desire to make clients happy that he falsely generated
12 information leading to refunds.
13     The problem is that crimes committed to benefit others
14 are still crimes, and they're still punishable.  The reason
15 that that is the case is because we are a country built on law,
16 and we adhere to the law whether we like it or not and even
17 when our hearts might wish that we could do something else.
18     I take into account Mr. Mattison's tragic life
19 circumstances.  But as a mature gentleman whose long life has
20 been recounted to this Court, I see that he has largely
21 overcome those childhood circumstances and been of great
22 service to his friends and his family, as well as those who
23 depend on him.  And, therefore, those tragic life
24 circumstances, which no one should have to endure, have no
25 bearing on the sentence to be imposed.

1       I see a bright man, somebody who could teach physics,
2  somebody who could figure out the tax code, and someone who
3  employed his intellect and his concern for others in fashioning
4  behavior that was illegal.  That's of great concern to me.
5  It's not the same kind of crime that we have when someone
6  engages in violence out of hate or fear or under the influence
7  of a drug or otherwise.  This was a calculated crime, this was
8  a created crime, using good skills, good abilities.
9  Ostensibly, for a good purpose, perhaps; but, nevertheless,
10 violating the law.
11      And what concerns me most about that is that it
12 continued after the plea agreement was entered.  While I have
13 technically found that the Government did not by a
14 preponderance of the evidence establish that it was
15 Mr. Mattison who filed these returns after the change of plea
16 hearing, he clearly knew about it and didn't stop it.  He let
17 it go on.
18      And it is for that reason that I am disinclined to
19 impose a variant sentence.  Instead, I believe a guideline
20 sentence is appropriate.  And in this case, it is a guideline
21 sentence at the bottom of the applicable guideline range.  The
22 guideline range is 21 to 27 months, and I intend to impose a
23 sentence of incarceration of 21 months.
24      I intend to impose a supervised release term of one
25 year.  I find that the special condition requested by the

1   Government is appropriate, that the defendant not have any
2   involvement in a tax preparation business.  And the reason I
3   find that is because it is his specific knowledge that he
4   brings to the tax preparation process that has caused these
5   crimes to occur.  And there is nothing to prevent that if he
6   were to nominally work in a tax preparation business in some
7   other capacity but the folks in the business were then to
8   consult him as to how returns should be prepared.
9           I find that he lacks the ability to pay a fine.  In
10  light -- especially in light of the restitution amount,
11  $133,544.  That restitution amount will not bear interest due
12  to the defendant's financial conditions.
13          The mandatory conditions of supervised release will
14  apply.  In addition, the standard conditions approved by the
15  Court will apply.  The recommended special conditions will
16  apply in part.
17          To the extent the restitution amount is not paid by
18  the time that supervised release begins, the defendant will
19  make payment on the restitution obligation during the period of
20  restitution.  The defendant will develop a plan in conjunction
21  with the probation officer within the first 60 days; and based
22  on his income and expenses, periodic payments will be required.
23  The plan will be forwarded to the Court for review and
24  approval.  And so long as he is making payments on that plan
25  and there is an obligation outstanding, he -- the plan will be

```
 1   reviewed on a quarterly basis.
 2            During that period of time, there will be no new
 3   credit charges or additional lines of credit obtained by the
 4   defendant unless he is in compliance with the periodic payment
 5   obligation plan approved by the Court.  And any new credit
 6   charges and lines of credit must be approved by the probation
 7   officer.
 8            Any income tax refunds, lottery winnings,
 9   inheritances, judgments, or any other moneys that are received
10   by the defendant will be applied to the restitution amount.
11   The probation officer can share any financial information with
12   the asset recovery division of the United States Attorney's
13   Office.
14            But the proposed conditions 8, 9, 10 will not be
15   imposed.  The defendant will comply with his legal obligations
16   associated with Colorado Department of Revenue and the Internal
17   Revenue Service.  And condition 12 will not be imposed, there
18   being no good cause for cognitive behavioral treatment.
19            The statutory mandatory assessment of $100 will be
20   imposed.
21            Is there any need for clarification, further
22   explanation, or request for continuance?
23            *MS. PALUCH:*  No, Your Honor.
24            *MR. JOHNSON:*  Your Honor, I -- sometimes Your Honor
25   does and sometimes Your Honor doesn't.  I will make the request
```

1  on behalf of Mr. Mattison that the Court recommend he be
2  designated to a facility in Colorado.
3  　　　*THE COURT:*  I deny the request.  I do so not because I
4  want to cause Mr. Mattison any inconvenience or his family any
5  inconvenience, because I know that the Bureau of Prisons will
6  take into account where family is located in choosing the
7  facility for him.  I do so in recognition of several things.
8  　　　First of all, in my experience, the Bureau of Prisons
9  not only has the authority to make this designation, but
10 exercises it over the recommendation of judges more than
11 50 percent of the time.  So for me to make a recommendation may
12 actually work to Mr. Mattison's disadvantage rather than his
13 advantage.
14 　　　The second thing is, Mr. Mattison is a caring,
15 thoughtful person; and I have little doubt that he will find
16 ministry opportunities even within prison.  And I don't want to
17 interfere with that possibility.  So he will meet with the
18 Bureau of Prisons on an interview intake basis, and his
19 preferences can be taken into account by the Bureau of Prisons
20 as part of that process.
21 　　　Any need for clarification on that?
22 　　　*MR. JOHNSON:*  No.  Thank you, Your Honor.
23 　　　*THE COURT:*  Okay.
24 　　　Then, having described the sentence that I believe
25 satisfies the provisions of 18 U.S.C. Section 3553, with

1  particular deference to the seriousness of this offense, to the
2  need to promote respect for the law, and the need to protect
3  the public from further crimes by the defendant, pursuant to
4  the Sentencing Reform Act of 1984 of it is the judgment of the
5  Court that the defendant, Hieu C. Mattison, be committed to the
6  custody of the Bureau of Prisons to be imprisoned for a term of
7  21 months.
8         Upon release from imprisonment, he'll be placed on
9  supervised release for a term of one year.  Within 72 hours of
10 release from the custody of the Bureau of Prisons, he'll report
11 in person to the probation office in the district to which he
12 is released.
13        While on supervision, Mr. Mattison, you cannot commit
14 another federal, state, or local crime; you cannot unlawfully
15 possess a controlled substance; you must refrain from any
16 unlawful use of a controlled substance; and you must submit to
17 at least one drug test within 15 days of placement on
18 supervision and two periodic tests thereafter.  You must
19 cooperate in the collection of DNA as directed by the probation
20 officer.
21        And during the period of supervised release, there are
22 a number of conditions that will be imposed.  There are
23 statutory conditions that are mandatory; there are standard
24 conditions imposed by the Court; and then there are special
25 conditions that are unique to you.  The ones that are unique to

1  you require that if a restitution obligation is still
2  outstanding, that you meet with your probation officer within
3  60 days of the beginning of supervised release to formulate a
4  plan for periodic payment to reduce that restitution
5  obligation.  This plan will be based on your income and your
6  expenses, and it will be forwarded to the Court for review.
7         So long as that plan is in place, you cannot incur new
8  credit charges or open additional lines of credit without the
9  approval of the probation officer.  And that will not be given
10 unless you're in compliance with the plan.  You must also apply
11 any moneys received from income tax refunds, lottery winnings,
12 inheritances, judgments, or any anticipated or unexpected
13 financial gains to the restitution amount.  The plan will be
14 reviewed on a quarterly basis.  Information that you supply to
15 the probation office can be shared with the asset recovery
16 division of the U.S. Attorney's Office.
17        You must comply with all of your legal obligations
18 associated with the Colorado Department of Revenue and Internal
19 Revenue Service.  The restitution payments will be made to the
20 Internal Revenue Service in the amount of $133,544, but the sum
21 will not bear interest.  And you will have no involvement in
22 the tax preparation business.
23        I do not impose a fine in light of the restitution
24 obligation; but I'm obligated to impose a special assessment of
25 $100, which is due and payable immediately.

1       I also must advise you of your right to appeal.  To
2  the extent that you reserved your right to appeal in your plea
3  agreement, you must exercise it within the next 14 days.  In
4  order to exercise your right to appeal, you must file a notice
5  of appeal within that time period.  And Mr. Johnson ordinarily
6  would do that for you; but if for some reason he's not able to
7  or willing to do that, you may request and I will direct the
8  Clerk of Court file a notice of appeal on your behalf.
9       Was there any bond posted in this case?
10      *MS. PALUCH:*  No, Your Honor, there was not.
11      *THE COURT:*  All right.  Then, there is no bond to be
12  exonerated.
13      Mr. Mattison, I urge you while you're in prison to
14  take time for yourself and also to honor your desire to help
15  other people.  I truly believe that you will find opportunities
16  to minister to the needs of others and that when you come out,
17  you will find other opportunities as well.  But please remember
18  that all of those opportunities exist within the confines of
19  the law.
20      Is there anything else we can do today?
21      *MS. PALUCH:*  No, Your Honor.  Thank you.
22      *MR. JOHNSON:*  No.  Thank you, Your Honor.
23      *THE COURT:*  Thank you, then, counsel; thank you to our
24  probation officer; thank you to our agent and our court staff
25  and our marshal staff.  That will conclude this matter.

1       Is there going to be a remand at this time, or is
2  there going to be a delayed reporting?
3       *MS. PALUCH:*  Your Honor, we would not object to the
4  defendant being allowed to self-report.
5       *THE COURT:*  All right.  Then I'll authorize
6  self-reporting.
7       Mr. Mattison, this means that you will have -- you'll
8  be notified of where you're going to report, and you will have
9  to report to that location no later than noon on the date that
10 you are specified.
11      Anything further?
12      *MS. PALUCH:*  No, Your Honor.
13      *MR. JOHNSON:*  No.  Thank you, Your Honor.
14      *THE COURT:*  Thank you.  We'll stand in recess.
15      (Recess at 10:59 a.m.)
16                    REPORTER'S CERTIFICATE
17
18    I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
19
20    Dated at Denver, Colorado, this 25th day of May, 2017.
21
22                                    *[signature: Therese Lindblom]*
23                                    Therese Lindblom,CSR,RMR,CRR
24
25